**THE VACEK GROUP, INC.**
**f/k/a Vacek–Crawford,**
**Inc., Appellant,**

**v.**

**Douglas C. CLARK and Benckenstein,**
**Norvell & Nathan, L.L.P.,**
**Appellees.**

**No. 01–00–00890–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 14, 2002.

Simon H. Hughes, Gilbert & Gilbert, Angleton, for Appellant.

Sam A. Houston, Cruse, Scott, Henderson & Allen, Houston, for Appellees.

Panel consists of Justices MIRABAL, NUCHIA, and RADACK.

## OPINION

SHERRY J. RADACK, Justice.

In this appeal of a legal-malpractice suit, we revisit—in light of the supreme court's opinion in *Murphy v. Campbell*—whether the *Hughes* tolling rule applies to malpractice claims arising out of transactional work performed by attorneys that occurs before litigation commences. *Murphy,* 964 S.W.2d 265, 272 (Tex.1997); *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 157 (Tex.1991). We conclude that *Murphy* dictates that the *Hughes* tolling rule does not apply in such situations.

Appellant The Vacek Group, Inc. f/k/a Vacek–Crawford, Inc. sued appellees Douglas C. Clark (Vacek's former lawyer) and Benckenstein, Norvell & Nathan, L.L.P. (Vacek's former law firm). After a bench trial, the district court rendered a take-nothing judgment. Vacek brings six issues on appeal, primarily challenging the sufficiency of the evidence. We affirm.

## Facts

Vacek is a forensic engineering company. The original shareholders were Sam Vacek, Donna Vacek, and Jim Crawford. After an altercation between Donna Vacek and Crawford, the shareholders agreed to a "corporate divorce" in which Crawford would resign as a director and sell his shares to Sam and Donna. Vacek hired Clark and his law firm to carry out this corporate divorce.

Clark drafted an April 15, 1997 agreement in principle, which was described in the document as a "preliminary agreement." According to the Agreement, Crawford was to transfer his shares of Vacek to Sam and Donna in exchange for Vacek's funding Crawford's simplified employee pension plan. Clark did not include language in the Agreement that released any potential claims by Crawford against Vacek. The Agreement was signed by Sam, Donna, and Crawford.

After disputes arose over compliance with the Agreement, Vacek sent Clark the following July 25, 1997 letter:

Based on recent events and the demand letter sent by the attorney for Jim Crawford yesterday it is obvious we are headed for court. We have now hired litigation counsel to respond to this letter and make similar demands on our behalf. You have not done this as our supposed corporate counsel.

Since it appears that the April agreement you wrote for both sides is at the center of this dispute, you should not have any more involvement in this issue.

Therefore, you are instructed not to release any information or have any discussions regarding any business of our corporation to anyone. This includes Jim Crawford and counsel for Jim Crawford.

Should you wish to discuss this matter further you may contact our attorney. . . .

Crawford later filed suit against Vacek, which Vacek settled for $24,000.

On July 27, 1999, Vacek sued Clark and his law firm for negligence, breach of fiduciary duty, breach of contract, and violation of the Deceptive Trade Practices–Consumer Protection Act. *See* Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987 & Supp.2002). Clark and the law firm answered and pleaded the affirmative defense of limitations. *See* Tex.R. Civ. P. 94. After a bench trial, the district court ren-

dered a take-nothing judgment and filed findings of fact and conclusions of law. In addition to holding against Vacek on the merits, the district court found that Vacek's claims against Clark and his law firm accrued before July 27, 1997 and concluded that those claims were barred by the statute of limitations. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.2002) (two-year limitations period); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988).

### Discussion

In issue one, Vacek challenges the factual sufficiency of the district court's discovery-rule finding that Vacek's malpractice claims against Clark and his law firm accrued before July 27, 1997. We review a trial court's findings of fact for factual sufficiency under the same standard as a jury verdict. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991). Because Clark and his law firm had the burden at trial to prove limitations, we will set aside the findings if the supporting evidence is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

Vacek argues that the statute of limitations does not apply for two reasons.[1]

**Tolling of limitations due to failure to disclose material fact**

First, Vacek claims the statute of limitations was tolled because Clark performed work for Vacek after July 27, 1997, billed for that work, and failed to disclose a material fact—that execution of the Agreement would not protect Vacek from subsequent claims because the Agreement did not include a release. *McClung v. Johnson,* 620 S.W.2d 644, 647 (Tex.Civ.

App.-Dallas 1981, writ ref'd n.r.e.) (holding limitations tolled until termination of attorney-client relationship when attorney fails to disclose material fact), *disapproved on other grounds by Willis v. Maverick,* 760 S.W.2d 642, 645 n. 2 (Tex.1988). Vacek argues that Clark's post-July 27, 1997 work included the preparation of a July 28, 1997 letter in which Clark identified himself as "the corporate attorney" and an August 22, 1997 letter regarding moving Crawford's furniture from Vacek's office and Vacek funding Crawford's pension plan.

Even if we were to assume Clark and his law firm had a duty to include a release in a "preliminary agreement," Vacek would still have had the burden of proof at trial regarding Clark's and his law firm's alleged failure to disclose. On appeal, Vacek does nothing more than make the conclusory statement that "Clark breached his duty to disclose facts material to his representation of the Corporation (that execution of the Agreement would not protect the Corporation from subsequent claims)." Without further argument or any citation to the record, Vacek has presented nothing for this Court to review. *See Harris County Mun. Util. Dist. No. 48 v. Mitchell,* 915 S.W.2d 859, 866 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *see also* TEX.R.APP. P. 38.1(h) (appellate brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record).

### *Hughes* tolling rule

Second, Vacek claims the statute of limitations was tolled because of the *Hughes* tolling rule. *See Hughes,* 821 S.W.2d at 157. In *Hughes,* the Texas Supreme Court observed that "when an attorney commits malpractice while providing legal services in the prosecution or

---

1. We recognize the novelty of raising statute-of-limitations tolling issues in the context of a

factual-sufficiency discussion, and we do not commend this practice to the bar.

defense of a claim which results in litigation, the legal injury and discovery rules can force the client into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case." *Hughes*, 821 S.W.2d at 156. The court held that such a position was untenable. *Id.* As a remedy, the court announced the *Hughes* tolling rule, stating that the statute of limitations for a malpractice claim against an attorney, committed in the prosecution or defense of a claim that results in litigation, is tolled until all appeals on the underlying claim are exhausted. *Id.* at 157.[2]

▮ The supreme court has restated the *Hughes* tolling rule on numerous occasions, each time stating that the rule is invoked when the alleged malpractice is committed by an attorney during the prosecution or defense of a claim that results in litigation. *Underkofler v. Vanasek*, 53 S.W.3d 343, 347 (Tex.2001); *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 121 (Tex.2001); *Murphy*, 964 S.W.2d at 272; *Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex.1995); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 483–84 (Tex.1992); *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex.1991); *Aduddell v. Parkhill*, 821 S.W.2d 158, 159 (Tex.1991), *overruled on other grounds by Underkofler*, 53 S.W.3d

at 347. However, a 1991 supreme court decision and a 1995 decision from this Court have raised an issue whether the *Hughes* tolling rule applies only to legal-malpractice claims arising from litigation of an underlying claim, or whether it applies to those legal-malpractice claims arising from transactional work performed by an attorney as well. *See Gulf Coast Inv. Corp.*, 821 S.W.2d at 160 (allowing application of *Hughes* tolling rule to attorney's alleged malpractice in conducting nonjudicial foreclosure action of real property that resulted in wrongful foreclosure action); *see also Utica Ins. Co. v. Pruitt & Cowden*, 902 S.W.2d 143, 147–48 (Tex.App.-Houston [1st Dist.]) (applying *Hughes* tolling rule to allow suit against attorney for committing error in drafting loan modification agreement), *remanded for rendition of agreed judgm't and opinion withdrawn from publication*, No. 01–94–00457–CV (Tex.App.-Houston [1st Dist.] Aug. 3, 1995, no writ) (not designated for publication).[3]

In 1997, the supreme court addressed the issue of whether the *Hughes* tolling rule applied to alleged accounting malpractice. *Murphy*, 964 S.W.2d at 272. The court first determined that, even though the discovery rule applied, the cause of action accrued no later than the date the plaintiffs received a deficiency notice from

---

**2.** The two-year statute of limitations applies to legal-malpractice causes of action. *Willis*, 760 S.W.2d at 644; *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp.2002). The statute provides that an injured client must bring suit not less than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.2002). A cause of action for legal malpractice generally accrues when the client sustains a legal injury. *Hughes*, 821 S.W.2d at 156. In cases in which the discovery rule applies, the limitations period does not begin running until the client discovers—or should have discovered through the exercise of reasonable care and diligence—the facts estab-

lishing the elements of the client's cause of action. *Willis*, 760 S.W.2d at 646.

**3.** Normally we would neither cite nor discuss an opinion designated for publication that was later withdrawn from publication. *See* Tex.R.App. P. 47.7. Unfortunately, the *Utica Insurance Co.* opinion is printed in the *South Western Reporter* and there is no indication in either West's *Texas Subsequent History Table* or *Shepard's Texas Citations* that the opinion has no precedential value. Finally, the supreme court, in *Apex Towing Co.*, has cited *Utica* as if it were precedential. We, therefore, discuss the *Utica* opinion in this appeal in the context of analyzing the supreme court's opinion in *Apex*.

the Internal Revenue Service in June 1987. *Id.* at 270–72. The plaintiffs filed their malpractice action in June 1991, more than two years after receiving the deficiency notice. *Id.* at 267. They argued that the *Hughes* tolling rule applied because they filed suit in United States Tax Court in September 1987 to protest the IRS ruling, and the suit was not resolved until November 1989. *Id.* at 267, 272. If the *Hughes* tolling rule applied, then the malpractice action was timely filed within two years.

The court stated that *Hughes* does not toll limitations whenever a litigant might be forced to take inconsistent positions, because such a rule would create too broad an exception to limitations. *Id.* at 272. The court emphasized that it "expressly limited the rule in *Hughes* to attorney malpractice in the prosecution or defense of a claim that results in litigation." *Id.* at 272. Although the court could have decided *Murphy* on the narrow ground that the *Hughes* tolling rule does not apply to accountants, it instead decided the case on the broader ground that the alleged underlying malpractice must occur "in the prosecution or defense of a claim that results in litigation." *Id.* at 272.[4] It follows from the logic of *Murphy* that alleged attorney-malpractice claims based on transactional work will not be tolled under *Hughes*.

Some appellate courts have interpreted the *Murphy* decision as narrowing the scope of the *Hughes* tolling rule to apply to only those cases in which the client continues to be represented by the attorney who allegedly committed malpractice in the underlying suit. *Eiland v. Turpin, Smith, Dyer, Saxe & McDonald,* 16 S.W.3d 461, 465–70 (Tex.App.-El Paso 2000), *pet.*

*granted, judgm't vacated w.r.m. per curiam,* 46 S.W.3d 872 (Tex.2001); *Apex Towing Co. v. Tolin,* 997 S.W.2d 903, 905 (Tex.App.-Beaumont 1999), *rev'd,* 41 S.W.3d 118 (Tex.2001); *Nuñez v. Caldarola,* 2 S.W.3d 755, 758–59 (Tex.App.-Corpus Christi 1999), *pet. granted, judgm't vacated w.r.m. per curiam,* 48 S.W.3d 174 (Tex. 2001). In response to this misinterpretation of *Murphy,* the supreme court stated that continued representation was not a requirement of *Hughes. Apex Towing Co.,* 41 S.W.3d at 121–22.

Additionally, in *Apex Towing Co.,* the supreme court created further ambiguity as to whether *Hughes* applies to alleged malpractice claims based on transactional work. *See id.* at 122. The court instructed lower courts to desist from re-examining whether the policy reasons behind *Hughes* apply in each legal-malpractice case presented and to "simply apply the *Hughes* tolling rule to the category of legal-malpractice cases encompassed within its definition." *Id.* at 122. The court cited our withdrawn opinion in *Utica Insurance Co.* as one of four cases in this category, as well as our opinion in *Farah v. Mafrige & Kormanik, P.C.,* the Fourth Court's opinion in *Burnap v. Linnartz,* and the Fifth Court's opinion in *Hoover v. Gregory. Id.* at 122; *Farah,* 927 S.W.2d 663 (Tex.App.-Houston [1st Dist.] 1996, no writ); *Burnap,* 914 S.W.2d 142 (Tex.App.-San Antonio 1995, writ denied); *Hoover v. Gregory,* 835 S.W.2d 668 (Tex.App.-Dallas 1992, writ denied).

In *Burnap,* the underlying claim arose from the drafting of a mutual release and indemnity agreement. 914 S.W.2d at 146. The court of appeals held that when the

---

4. The Eighth and Fourteenth Courts of Appeals have discussed the stare decisis effect of the judicial dictum in *Murphy. Eiland v. Turpin, Smith, Dyer, Saxe & McDonald,* 16 S.W.3d 461, 469–70 (Tex.App.-El Paso 2000),

*pet. granted, judgm't vacated w.r.m. per curiam,* 46 S.W.3d 872 (Tex.2001) (following *Murphy*); *Edwards v. Kaye,* 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (not following *Murphy*).

alleged malpractice is not ·connected with the prosecution or defense of a claim, the rationale for the tolling provision of *Hughes* is inapplicable. *Id.* at 147. *Burnap* also distinguished the supreme court's *Gulf Coast* opinion, based on the fact that the underlying claim in *Gulf Coast* arose from the *prosecution* of a claim in a nonjudicial foreclosure sale. *Id.* at 147.

In *Hoover v. Gregory,* the underlying claim was based on faulty tax advice rendered before litigation commenced. 835 S.W.2d at 670. *Hoover,* like *Burnap,* interpreted *Hughes* narrowly, stating that the *Hughes* tolling provision only applies to legal-malpractice cases in which the suit brought against the attorney arises in the course of litigating the underlying claim. *Id.* at 675.

The rationale behind our withdrawn opinion in *Utica Insurance Co.* is inconsistent with *Burnap* and *Hoover.* Compare *Utica Ins. Co.,* 902 S.W.2d at 147–48 (applying *Hughes* tolling rule when underlying malpractice claim not committed during litigation) *with Burnap,* 914 S.W.2d at 147 *and Hoover,* 835 S.W.2d at 675 (not applying *Hughes* tolling rule when underlying alleged malpractice not committed during litigation). Based on the conflict between the rationale behind our withdrawn opinion in *Utica Insurance Co.* and the *Burnap* and *Hoover* opinions, it is impossible to say that the supreme court's citation of *Utica* in *Apex Towing Co.* constitutes an affirmative endorsement of the *Utica* rationale. We therefore must revisit—in light of the supreme court's opinion in *Murphy*—whether the *Hughes* tolling rule applies to malpractice claims arising out of transactional work performed by attorneys that occurs before litigation commences.

### Definitions of "Claim," "Prosecution," and "Defense"

The *Hughes* tolling rule applies in certain situations "when an attorney commits malpractice while providing legal services in the *prosecution* or *defense* of a *claim* which results in litigation." *Hughes,* 821 S.W.2d at 156 (emphasis added). The definitions of the words used by the supreme court in *Hughes* suggests that transactional malpractice is not contemplated by the equitable-tolling doctrine.

A "claim" is defined as "the assertion of an existing right; any right to payment or to an equitable remedy." BLACK'S LAW DICTIONARY 240 (7th ed. 1999). The *Restatement (Second) of Judgments* agrees with this definition, noting that the term "claim" and its older cognate "cause of action" are references to units of litigation. RESTATEMENT (SECOND) OF JUDGMENTS ch. 3, topic 2, tit. D (1982). Further, the "transactional view of claim," to which the *Restatement* subscribes, defines the claim extinguished by rules of bar or merger as including all of the plaintiff's rights "to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) & cmt. a (1982).

Based on these definitions, a distinction can be made, in the context of the *Hughes* tolling rule, between malpractice claims arising from the litigation of a client's previously existing claim and a malpractice claim arising from an attorney's negligence in executing a business transaction. In the first instance, when a malpractice claim is based on an attorney's error in prosecuting or defending a client's claim, that claim existed before and independent of the attorney's involvement. This is the type of "underlying claim" that merits the protection afforded by *Hughes,* because "inconsistent litigation postures" must be taken to resolve both disputes. *See Hughes,* 821 S.W.2d at 156. In the second

instance, when a malpractice claim is based on an error in transacting business of some kind, the client's claim does not exist before or independent of the attorney's involvement. Rather, the reverse is true. The alleged malpractice itself becomes the "underlying claim" to the subsequent litigation that it caused.

Independently, an examination of the words "prosecution" and "defense" lead to the same conclusion. To "prosecute" means to "commence and carry out a legal action." BLACKS LAW DICTIONARY at 1237. "Defense" is defined as "[a] defendant's method and strategy in opposing the plaintiff or prosecution." *Id.* at 430. Applying these definitions, actions taken by attorneys in conducting transactional work do not qualify as prosecution or defense of a claim.

### Categories of Legal Malpractice

 It is unclear what the supreme court meant by "that category of legal-malpractice cases encompassed within its [*Hughes*'] definition." *Apex Towing Co.,* 41 S.W.3d at 122. Applying the definition of "claim" we have previously discussed, we see four general categories of legal-malpractice cases: (1) the client has an accrued claim, and the attorney allegedly commits malpractice either (a) before litigation commences or (b) in the course of prosecuting or defending the claim in a nonlitigation setting; (2) the client has an accrued claim, and the attorney allegedly commits malpractice after litigation commences; (3) the client does not have an accrued claim, and the attorney allegedly commits malpractice after litigation commences; and (4) the client does not have an accrued claim, and the attorney allegedly commits malpractice before litigation commences.

*1. The client has an accrued claim and the attorney allegedly commits malpractice either (a) before litigation*

*commences or (b) in the course of prosecuting or defending the claim in a nonlitigation setting.*

With respect to the first category, the *Hughes* tolling rule applies to situations in which the client has an accrued claim and the attorney allegedly commits malpractice before litigation commences. *See Aduddell,* 821 S.W.2d at 159 (applying *Hughes* to legal-malpractice claim arising from attorney's failure to file lawsuit before extinguishment of claim by limitations).

This category also includes situations in which the client has an accrued claim and the attorney allegedly commits malpractice in the course of prosecuting or defending the claim in a nonlitigation setting. *See Gulf Coast Inv. Corp.,* 821 S.W.2d 159. Gulf Coast presumably had an existing contract lien, which it foreclosed at a nonjudicial sale. *Id.* at 160. *See generally* TEX. PROP.CODE ANN. § 51.002 (Vernon 1995) (procedure for sale of property under contract lien). Gulf Coast's attorneys failed to give proper notice of the nonjudicial foreclosure sale, and as a result, Gulf Coast was forced to defend itself in a wrongful-foreclosure action. 821 S.W.2d at 160.

Finally, this category includes *Hughes* itself. 821 S.W.2d at 157. In *Hughes,* the attorney's alleged malpractice occurred in naming himself rather than the Hugheses as temporary managing conservator of the child in the affidavit of relinquishment of parental rights. *Id.* at 155. This alleged malpractice occurred before the filing of the adoption proceeding. *Id.* The supreme court obviously chose to view the term "claim" in a pragmatic light in *Hughes,* as technically the adopting couple had no existing right, *i.e.,* claim, to adopt.

*2. The client has an accrued claim and the attorney allegedly commits malpractice after litigation commences.*

With respect to the second category, there is abundant authority, from both the supreme court and the courts of appeals, holding that the *Hughes* tolling rule applies in such cases. *Vanasek,* 53 S.W.3d at 345–46; *Apex Towing Co.,* 41 S.W.3d at 119, 123; *Sanchez,* 898 S.W.2d at 288; *Am. Centennial Ins. Co.,* 843 S.W.2d at 483; *Edwards,* 9 S.W.3d 310, 311, 314 (Tex. App.-Houston [14th Dist.] 1999, pet. denied); *Guillot v. Smith,* 998 S.W.2d 630, 631, 633 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Farah,* 927 S.W.2d at 669, 679; *Washington v. Georges,* 837 S.W.2d 146, 148 (Tex.App.-San Antonio 1992, writ denied).

***3. The client does not have an accrued claim and the attorney allegedly commits malpractice after litigation commences.***

We are unaware of any published opinions that address this category.

***4. The client does not have an accrued claim and the attorney allegedly commits malpractice before litigation commences.***

As to the fourth category of cases, the class in which *Utica Insurance Co., Burnap,* and *Hoover* fit, the supreme court has not yet definitively spoken. However, the reasoning of the supreme court in *Murphy* discredits the rationale of our withdrawn opinion in *Utica Insurance Co.,* if *Murphy* stands for something more than merely excluding alleged accounting malpractice from the *Hughes* tolling rule. *Murphy,* 964 S.W.2d at 272. Although the citation in *Apex Towing Co.* of *Utica, Burnap,* and *Hoover* certainly has interjected some ambiguity, we believe that the supreme court will not apply the *Hughes* tolling rule to a malpractice claim arising out of transactional work performed by attorneys that occurs before litigation commences.

Finally, the unresolved conflict between the rationale in *Utica Insurance Co.* and the *Burnap* and *Hoover* opinions requires us to note the policy concerns raised in *Hughes,* notwithstanding the supreme court's direction to simply apply the *Hughes* tolling rule. *Apex Towing Co.,* 41 S.W.3d at 122.

The rationale behind the *Hughes* tolling rule suggests that *Hughes* does not apply when an attorney allegedly commits malpractice by negligently drafting documents that are not connected with any existing litigation at the time of their creation. *See Hughes,* 821 S.W.2d at 157. In *Hughes,* the court noted that if a person is forced to file a malpractice suit against an attorney while the underlying claim is still on appeal, that individual will be forced to take inconsistent positions, which will compromise the likelihood of success in both suits. *Id.* at 157. This type of conflict does not arise when the underlying claim is based on transactional work performed by an attorney. *See Burnap,* 914 S.W.2d at 147.

■ Accordingly, we conclude that the rationale behind the holding in our withdrawn *Utica Insurance Co.* opinion has been discredited by the supreme court's opinions in *Apex Towing Co.* and *Murphy.* We hold the *Hughes* tolling rule does not apply to malpractice claims based on errors committed by attorneys in the course of conducting transactional work. Here, Clark's alleged malpractice was in drafting the Agreement, which is transactional work. Clark did not draft the Agreement in the prosecution or defense of a claim that results in litigation. Following *Apex Towing Co.* and *Murphy,* we hold the *Hughes* tolling rule does not apply to Vacek's situation.

**Factual sufficiency of trial court's discovery-rule finding**

■ Having disposed of Vacek's two tolling arguments, we return to its factual-

sufficiency challenge to the district court's finding that Vacek's malpractice claims against Clark and his law firm accrued before July 27, 1997. The district court was obligated to answer the discovery-rule issue: when did Vacek know, or exercising reasonable diligence, when should it have known of the facts giving rise to its causes of action against Clark and his law firm? *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998). The district court found that date to be before July 27, 1997, relying no doubt on Vacek's July 25, 1997 letter terminating Clark as Vacek's lawyer. After reviewing the entire record, we hold the evidence supporting the district court's findings is not so weak as to be clearly wrong and manifestly unjust.

We overrule issue one.

**Breach-of-contract claim**

In issue two, Vacek argues in part that the district court incorrectly concluded that Vacek's breach-of-contract claim is subsumed into a negligence claim and is barred by limitations, citing our opinion in *Jampole v. Matthews,* 857 S.W.2d 57 (Tex. App.-Houston [1st Dist.] 1993, writ denied). We do not agree that *Jampole* applies to this case.

 In *Jampole,* we recognized a cause of action for breach of contract independent of a legal-malpractice claim. *Id.* at 62. That case, however, limited this distinction to actions against attorneys for excessive legal fees. *Id.; see Greathouse v. McConnell,* 982 S.W.2d 165, 172 n. 2 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Breach-of-contract claims for legal malpractice are in the nature of tort actions, and the applicable statute of limitations is two years. *See Judwin Props., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 506 (Tex.App.-Houston [1st Dist.] 1995, no writ).

We overrule that portion of issue two which alleges that the district court incorrectly concluded that Vacek's breach-of-contract claim is subsumed into a negligence claim and is barred by limitations.

In the remainder of issue two and in issues three, four, five, and six, Vacek claims the district court's findings on the merits of the case are factually insufficient: breach-of-contract claim (remainder of two); DTPA claim (three); negligence claim (four); breach-of-fiduciary-duty claim (five); and proximate, producing, and legal cause findings (six). Because we hold that Vacek's claims are barred by limitations, we need not reach these issues.

**Conclusion**

We affirm the district court's judgment.