



# OPINION

No. 04-10-00243-CV

**PRESSURE SYSTEMS INTERNATIONAL, INC.**, and Equalaire Systems, Inc.,
Appellants

v.

**SOUTHWEST RESEARCH INSTITUTE**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-07748
Honorable Michael Peden, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
    Phylis J. Speedlin, Justice
    Rebecca Simmons, Justice

Delivered and Filed:  May 25, 2011

REVERSED AND REMANDED; MOTION FOR REHEARING DENIED

On March 2, 2011, we issued an opinion reversing the trial court's judgment. Appellee Southwest Research Institute ("Southwest Research") then filed a motion for rehearing. We deny the motion for rehearing; however, to clarify our opinion, we withdraw our prior opinion and judgment, and substitute this opinion and judgment in their place.

Appellants Pressure Systems International, Inc. and Equalaire Systems, Inc. (collectively "PSI") appeal the trial court's granting of the summary judgment filed by Southwest Research.

The issue in this appeal is whether Southwest Research proved as a matter of law that the claims brought by PSI are barred by their respective statutes of limitations. Because we hold that Southwest Research failed to meet its summary judgment burden, we reverse the trial court's judgment and remand the cause for further proceedings.

## BACKGROUND

In 1993, PSI was created for the purpose of developing and selling an automatic tire inflation system ("ATIS") for tractor trailers. Its president, Anthony Ingram, was involved in negotiations with Southwest Research, and in May 1993, PSI and Southwest Research entered into a contract whereby Southwest Research agreed to assist PSI with developing and testing an ATIS. As part of this contract, Southwest Research agreed to the following provisions:

> [Southwest Research] shall not publish or make known to others the subject matter or results of the Project or any information contained in connection therewith which is proprietary and confidential to [PSI] without [PSI]'s written approval.
>
> [Southwest Research] represents that each of its employees assigned to work on the Project will have entered into an employment contract with [Southwest Research] which provides for the assignment to [Southwest Research] of all inventions of such employees which fall within the terms of this contract with [PSI]. If, during the time this contract with [PSI] is in force, a [Southwest Research] employee as a result of his work on the Project makes an invention or discovery which relates exclusively to the Project, [Southwest Research] shall promptly make the fact of such invention or discovery known to [PSI]. At [PSI]'s request, [Southwest Research] shall use its diligent efforts to cause its employees to execute all papers necessary or incidental to timely and proper applications for Letters Patent of the United States and all foreign countries and to convey to [PSI] complete title to all such inventions and discoveries.
>
> [Southwest Research] shall not undertake simultaneous research and development projects for more than one client when, in the judgment of [Southwest Research], the objectives of the projects or the nature and scope of the work required to be done may result in a conflict of interest.

Southwest Research assigned its employee, John Bradley, to be the principal engineer on the project with PSI.

In April 1997, Ingram, the president of PSI, was fired. PSI's new president, Tim Musgrave, became concerned that Ingram would attempt to develop his own ATIS. Thus, PSI hired a private investigator to follow Ingram and determine whether Ingram was "going to go into competition with" PSI. Indeed, after leaving PSI, Ingram did develop his own ATIS and in August 2000 received a patent for his ATIS.

Ingram then founded a company, Airgo, to manufacture and sell his ATIS. In 2005, Airgo sued PSI in federal district court in Oklahoma, alleging that PSI was infringing upon three patents issued to Ingram and later assigned to Airgo. PSI counterclaimed for infringement of its own ATIS patent, misappropriation of trade secrets, breach of fiduciary duty, breach of contract, conspiracy, and violation of the Texas Theft Liability Act. With respect to Airgo's claims for patent infringement, the federal district court granted PSI's motion for summary judgment, finding that PSI's ATIS did not infringe any of Airgo's patents as a matter of law. *Airgo IP, LLC v. Arvinmeritor, Inc.*, No. CIV-05-1405-R, slip op. at 2 (W.D. Okla. July 30, 2007). However, the federal district court also granted Airgo's motion for summary judgment with respect to PSI's patent infringement claim, finding that Airgo's ATIS did not infringe PSI's patent as a matter of law. *Id.* at 11. Further, with respect to PSI's counterclaims for misappropriation of trade secrets, breach of duty, breach of contract, conspiracy, and violation of the Texas Theft Liability Act, the federal district court granted summary judgment in favor of Airgo, explaining that PSI had "wholly failed to show that [it] ha[d] in any manner been *damaged* by Anthony Ingram's alleged misappropriation of PSI's trade secrets, a necessary element to PSI's counterclaim for misappropriation of trade secrets and of all of PSI's remaining state law

counterclaims." *Id.* at 6 (emphasis in original). The Federal Circuit Court of Appeals affirmed the trial court's judgment. *Airgo IP, LLC v. Arvinmeritor, Inc.*, 277 Fed. Appx. 1023, 1024 (Fed. Cir. 2008).

It was during this litigation that PSI claims it first learned of Southwest Research's connection to Ingram. According to PSI, on January 2, 2007, a tape recording of a meeting between Ingram and John Bradley, the principal engineer assigned by Southwest Research to work on PSI's ATIS, was produced to PSI during discovery. The meeting between Ingram and Bradley occurred in July 1997, about three months after Ingram was fired from PSI, at Southwest Research's facility. After learning of this meeting, PSI also learned that in 1997, Bradley had prepared technical drawings for Ingram's ATIS, made calls to vendors on behalf of Ingram for prototype development, and accepted deliveries at Southwest Research's facility for the prototypes being developed. Further, PSI learned that after Bradley had retired from Southwest Research in 2001, he worked as a consultant to Ingram's company Airgo in 2003 and 2004 to develop a competing ATIS.[1] And, in March 2007, PSI learned that Ray Polasek, another employee of Southwest Research who worked on the PSI project, also assisted Airgo in 2003 and 2004 to help with the competing ATIS. According to Musgrave, while PSI knew that Ingram had been granted a patent in August 2000 that competed with its ATIS, it did not know until January 2, 2007, that Ingram had been in contact with Southwest Research employees in an effort to develop a competing ATIS.

On January 2, 2009, PSI sued Southwest Research for negligence, negligent hiring, negligent supervision, breach of contract, breach of fiduciary duty, fraud, misappropriation of trade secrets, and violation of the Texas Theft Liability Act. Southwest Research later filed a

---

[1] Ingram, and later his company Airgo, developed more than one ATIS to compete with PSI.

traditional motion for summary judgment, arguing that PSI's claims were barred by their respective statutes of limitations. The trial court granted the motion, and PSI appeals.

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the respondent, and we indulge every reasonable inference and resolve any doubts in the respondent's favor. *Id.*

"A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). "Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *Id.* If the movant establishes that the statute of limitations bars the action, the respondent must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

## STATUTE OF LIMITATIONS

Generally, when a cause of action accrues is a question of law. *Provident*, 128 S.W.3d at 221. "[A] cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Id.* "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.* However, two exceptions may defer accrual of a claim: the discovery rule and the doctrine of fraudulent concealment.

The discovery rule is "a very limited exception to statutes of limitations" and applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "[W]hen the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered *the injury and* that it was *likely caused by the wrongful acts of another*." *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) (emphasis added). Similarly, the doctrine of fraudulent concealment defers accrual of a cause of action because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

Southwest Research does not dispute that the discovery rule applies.[2] Instead it contends that even if the rule does apply, limitations began to run in late 2000 when PSI learned that Ingram had received a patent that competed with its own ATIS. In so arguing, it emphasizes that for limitations to begin to run, PSI did not need to know the exact identity of the wrongdoer, i.e. Southwest Research employees. Indeed, under the discovery rule, once a plaintiff discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another, "limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer." *Childs*, 974 S.W.2d at 40; *see also Exxon Corp. v. Emerald Oil & Gas Co.*, No. 05-1076, 2011 WL 1226100, at *8 (Tex. Apr. 1, 2011) ("Once a claimant *learns of a wrongful injury*, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; *the party responsible for it*; the full extent of it; or the chances of avoiding it.'") (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners*

---

[2] Indeed, the discovery rule is written into the statute of limitations for misappropriation of trade secrets. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.010(a) (West 2002) ("A person must bring suit for misappropriation of trade secrets not later than three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.").

*Ltd.*, 146 S.W.3d 79, 93 (Tex. 2004)) (emphasis added). That is, the plaintiff must be aware that his injury was caused by someone's wrongful act, but need not necessarily know *who* performed the wrongful act. Thus, the issue here is when PSI discovered, or in the exercise of reasonable diligence, should have discovered its injury and that its injury was likely caused by the wrongful acts of another. In other words, PSI did not need to know that its injury was caused specifically by employees of Southwest Research. But, PSI did need to be aware, or through the exercise of reasonable diligence should have been aware, that its injury was likely caused by *someone's* wrongful act. *See KPMG*, 988 S.W.2d at 749 (holding that court of appeals erred in stating that a claim does not accrue until a plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury, and explaining that "accrual occurs when the plaintiff knew or should have known of the *wrongfully caused injury*") (emphasis added).

In emphasizing that a plaintiff need not know the specific identity of the party responsible for its wrongfully caused injury, Southwest Research points to the deposition testimony of PSI's president, Musgrave, where he testifies that upon reviewing the patent issued to Ingram, he believed that Ingram's ATIS "was very similar to ours and there was technology in there that, obviously, was a copy of what we were doing." Southwest Research also points to the deposition testimony of Kevin Henning, PSI's Vice President for Product Development, who testified that he did not believe Ingram could have invented his ATIS because Ingram "never exhibited any type of technical knowledge or never contributed technically in any way." Thus, Southwest Research argues that PSI knew it was injured in late 2000.

However, for limitations to have begun to run, PSI need not only to have known it was injured, it must have known, or should have known, that it was *wrongfully* injured. That Ingram left PSI, developed a competing ATIS, and created a company to compete with PSI did injure

PSI in the form of loss of sales. But, generally, employees may leave their employ and compete with their former employers, and such competition is not necessarily *wrongful in and of itself*. There is nothing in the record before us to indicate Ingram's development of a competing ATIS was wrongful as to PSI. According to the record presented, what made the competition wrongful in this case was, specifically, the assistance of Southwest Research employees. Southwest Research and PSI had a contract that did not allow Southwest Research to help PSI's competitors at the same time it was helping PSI if doing so may result in a conflict of interest.[3] And, that contract provided that if any Southwest Research employees invented or discovered anything relating to PSI's ATIS project, Southwest Research would cause its employees to assign title to all such inventions or discoveries to PSI. Because of this contractual relationship, neither Southwest Research nor its employees was allowed to assist any of PSI's competitors at the same time it was assisting PSI if doing so may result in a conflict of interest. Thus, it was not until PSI learned that *Southwest Research employees* had assisted Ingram in developing a competing ATIS that PSI knew or should have known of any wrongful acts involved in the development of the competing ATIS. While Southwest Research may have proven that PSI knew it was injured by Ingram competing with it in late 2000, Southwest Research did not meet its burden of proving that PSI knew it was *wrongfully* injured in late 2000. Therefore, fact issues exist, precluding summary judgment in this case.

---

[3] The actual language of the contract provided that Southwest Research would not "undertake simultaneous research and development projects for more than one client when, in the judgment of [Southwest Research], the objectives of the projects or the nature and scope of the work required to be done may result in a conflict of interest."

**CONCLUSION**

Because Southwest Research did not meet its burden of proving that limitations began to run in late 2000 as a matter of law, we reverse the trial court's summary judgment and remand this cause for further proceedings consistent with this opinion.[4]


Karen Angelini, Justice

---

[4] Having determining that the trial court's summary judgment should be reversed, we need not reach PSI's remaining issue regarding whether the trial court erred in denying PSI's motion for continuance.