

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00249-CV

**CELLTEX SITE SERVICES, LTD.**,
Appellant

v.

**KREAGER LAW FIRM** and James S. Cheslock,
Appellees

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-06884
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by: Catherine Stone, Chief Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed: December 28, 2012

AFFIRMED

CellTex Site Services, Ltd. appeals a summary judgment ordering that it take nothing on its legal malpractice claim against Kreager Law Firm and James S. Cheslock. The summary judgment was based on limitations. In arguing that limitations was tolled by the *Hughes* tolling doctrine, CellTex, in essence, urges this court to reconsider our holding in *Burnap v. Linnartz*, 914 S.W.2d 142 (Tex. App.—San Antonio 1995, writ denied), in which we held that the *Hughes* tolling doctrine is inapplicable to legal malpractice claims arising from transactional work. CellTex also contends that Kreager and Cheslock failed to conclusively establish when CellTex

discovered its legal malpractice claim for purposes of determining when limitations began to run. We affirm the summary judgment.

## BACKGROUND

CellTex hired Kreager and Cheslock to represent it in drafting an agreement with National Exchange Service QI, Ltd. pertaining to a 1031 exchange. CellTex intended to sell a tract of real property it owned, and a 1031 exchange would allow CellTex to defer the payment of federal income taxes that otherwise would be due following the sale. In order to conduct a 1031 exchange, the proceeds from the sale must be placed with a qualified intermediary until the proceeds are used to buy another tract of real property within a specified time period. The purpose of the agreement between CellTex and National Exchange was to set forth the terms and conditions pursuant to which National Exchange would serve as the qualified intermediary. One of those terms required National Exchange to maintain insurance with regard to the sales proceeds.

After approximately $2,000,000 in proceeds from the sale was deposited with National Exchange in accordance with the agreement, National Exchange went bankrupt, and National Exchange's bond/insurance company denied CellTex's claim. As a result, CellTex lost its money.

CellTex subsequently sued Kreager and Cheslock for legal malpractice, alleging they failed to adequately structure the transaction to protect CellTex's funds and failed to properly analyze National Exchange's bond/insurance coverage. Kreager and Cheslock moved for a traditional summary judgment based on limitations. CellTex filed a response, raising the *Hughes* tolling doctrine. The trial court granted summary judgment in favor of Kreager and Cheslock.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

## *HUGHES* TOLLING DOCTRINE

*A.*     *Hughes v. Mahaney & Higgins*

In *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991), the Texas Supreme Court addressed "the proper application of the statute of limitations in a legal malpractice case when the attorney allegedly commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation." In that case, Robert M. Mahaney, an attorney who was retained by James and Patti Hughes to assist them with an adoption, obtained a signed affidavit of relinquishment of parental rights from the child's biological mother that named Mahaney, as opposed to the Hughes, as the child's temporary managing conservator. *Id.* The Hughes filed a lawsuit to terminate the mother's rights and adopt the child; however, the biological mother had a change of heart and filed a motion to dismiss the Hughes' lawsuit. *Id.* The motion to dismiss alleged the Hughes lacked standing to bring the suit because they were not named in the affidavit as the temporary managing conservators. *Id.* The trial court denied the motion; however, the appellate court reversed, holding the Hughes lacked standing. *Id.* at 156. The application for writ of error challenging the appellate court's holding was denied, and the motion for rehearing on the application was overruled on July 10, 1985. *Id.*

On May 21, 1987, the Hughes sued Mahaney for legal malpractice, alleging they would have had standing if they had been named temporary managing conservators in the affidavit. *Id*. Mahaney filed a motion for summary judgment based on limitations, arguing the malpractice cause of action accrued as early as February 17, 1983, the date the biological mother revoked her affidavit of relinquishment. *Id*. at 157. The Texas Supreme Court concluded that the statute of limitations was tolled until all of the Hughes' appeals in the termination action were exhausted regardless of when the cause of action accrued, holding, "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id*. at 157.

B.      *Burnap v. Linnartz*

In *Burnap v. Linnartz*, 914 S.W.2d 142 (Tex. App.—San Antonio 1995, writ denied), this court considered whether the *Hughes* tolling doctrine should be applied in a transactional context. In *Burnap*, William Rork, an associate of Lawrence Linnartz, was retained to perform the legal work necessary for the withdrawal of two partners from a partnership. 914 S.W.2d at 145-46. Willard Burnap, a partner in the partnership, was later sued in connection with a note signed by the partnership solely based on an indemnity agreement he signed at the time the two partners withdrew from the partnership. *Id*. at 146-47. Burnap subsequently sued Rork and his law firm for legal malpractice. *Id*. at 147. Rork and his law firm moved for summary judgment on the basis of limitations. *Id*. Burnap argued that limitations was tolled until the completion of all appeals in the lawsuit involving the note. *Id*. This court disagreed, asserting, "*Hughes* articulates a narrow tolling doctrine, applicable only when a lawyer commits malpractice **in litigation of a claim or defense**." *Id*. (emphasis added). This court reasoned:

In the instant case there is no malpractice alleged in connection with prosecution or defense of a claim. Rather, Burnap claims appellees committed malpractice in connection with preparation and execution of partnership and corporate documents. The rationale for the *Hughes* tolling doctrine, to prevent the client from being forced into adopting inherently inconsistent litigation postures in the underlying case and in the malpractice case, simply is inapplicable in the present context.

*Id*. at 147-48 (citations omitted).

C.      *Gulf Coast Inv. Corp. v. Brown*

CellTex challenges this court's statement in *Burnap* that the *Hughes* tolling doctrine applies only when a lawyer commits malpractice "in litigation of a claim or defense," arguing that the Texas Supreme Court applied the *Hughes* tolling doctrine in a transactional context in *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159 (Tex. 1991). In that case, a property owner sued a creditor for wrongful foreclosure, alleging the foreclosure sale conducted by the creditor was invalid because the foreclosure notice was improper. *Id*. at 160. After the wrongful foreclosure suit was settled, the creditor sued the law firm that represented it in the foreclosure sale. *Id*. With regard to limitations and tolling, the Texas Supreme Court held, "when an attorney's malpractice in conducting a non-judicial foreclosure sale of real property results in a wrongful foreclosure action against the client, the statute of limitations on the malpractice claim is tolled until the wrongful foreclosure action is finally resolved." *Id*.

Although CellTex contends that *Gulf Coast*, applied the tolling doctrine in a transactional context, this court interpreted *Gulf Coast* as matching the *Hughes* paradigm, asserting the tolling doctrine was applied "to *prosecution* of a claim in a non-judicial foreclosure sale." *Burnap*, 914 S.W.2d at 147 (emphasis in original). As another court has more recently explained, the "claim" in *Gulf Coast* was the creditor's debt claim against the property, and the law firm "prosecuted" the claim by conducting the foreclosure sale. *See J.M.K, 6, Inc. v. Gregg & Gregg, P.C.*, 192

S.W.3d 189, 198 n.5 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "The prosecution of the claim resulted in litigation when the [property owner] filed a wrongful foreclosure action." *Id.*

D. *Apex Towing Co. v. Tolin*

CellTex next contends that our holding in *Burnap* was criticized by the Texas Supreme Court in *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001). In *Apex Towing*, the plaintiffs sued their law firm for mishandling the defense of a maritime personal injury lawsuit. 41 S.W.3d at 118. In holding that limitations was tolled until the conclusion of all appeals in the maritime personal injury lawsuit, the court reaffirmed its holding in *Hughes* that "When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded." *Id.* at 119.

The court noted that it intended to establish a bright-line rule by using a categorical approach to the "clear and strict application of the *Hughes* tolling rule" in order to bring "predictability and consistency to the jurisprudence." *Id.* at 122. With regard to *Burnap*, the court cited it among other decisions to support this contention, "Similarly, without re-examining whether the policy reasons behind the tolling rule apply in each legal-malpractice case matching the *Hughes* paradigm, courts should simply apply the *Hughes* tolling rule to the category of legal-malpractice cases encompassed within its definition." *Id.* Thus, the only criticism of *Burnap* was this court's unnecessary exploration of the policy reasons for the *Hughes* decision. As *Apex Towing* instructs, this court is simply to categorically apply the *Hughes* holding to "legal malpractice case[s] matching the *Hughes* paradigm." *Id.*

CellTex also refers to *Apex Towing*'s citation of *Utica Ins. Co. v. Pruitt & Cowden*, 902 S.W.2d 143, 147-48 (Tex. App.—Houston [1st Dist.] 1995), *remanded for rendition of agreed jdmt. and opinion withdrawn from publication*, No. 01-94-00457-CV (Tex. App.—Houston [1st

Dist.] Aug. 3, 1995, no writ) (not designated for publication), which applied the tolling rule to a drafting error by an attorney in preparing a loan modification agreement. In *The Vacek Group, Inc. v. Clark*, 95 S.W.3d 439, 445 (Tex. App.—Houston [1st Dist.] 2002, no pet.), however, the Houston court noted the rationale in the withdrawn opinion in *Utica* was inconsistent with *Burnap*. The Houston court then revisited whether the *Hughes* tolling rule applied to malpractice claims arising out of transactional work performed by attorneys that occurs before litigation commences. *Id*. at 445-47. Although the court agreed that the Texas Supreme Court's citation to both *Utica* and *Burnap* in *Apex Towing* "certainly has interjected some ambiguity," the Houston court believed that the supreme court would not apply the tolling doctrine to a malpractice claim arising out of transactional work performed by attorneys that occurs before litigation commences just as it refused to apply the tolling doctrine to instances of accounting malpractice. *Id*. at 447. Other courts also have agreed that the *Hughes* tolling doctrine does not apply to transactional work. *Isaacs v. Schleier*, 356 S.W.3d 548, 562-63 (Tex. App.—Texarkana 2011, pet. denied); *J.M.K. 6, Inc.*, 192 S.W.3d at 198-99; *Murphy v. Mullin, Hoard & Brown, L.P.*, 168 S.W.3d 288, 292 (Tex. App.—Dallas 2005, no pet.).

CellTex further cites *Brents v. Haynes & Boone, L.L.P.*, 53 S.W.3d 911, 915 (Tex. App.—Dallas 2001, pet. denied), as holding the *Hughes* rule applies to transactional legal malpractice. However, the malpractice in *Brents* was not based on transactional work; instead the issue was "whether tolling of a legal malpractice action that occurs in litigation will be extended beyond the conclusion of litigation of a claim concerning whether malpractice allegedly occurred, to the conclusion of threatened subsequent litigation against the 'malpracticed' party based on that malpractice." 53 S.W.3d at 916. Moreover, the Dallas court clearly held in *Murphy* that "alleged malpractice claims based on transactional work are not tolled under the *Hughes* rule." 168 S.W.3d at 292.

E.      Conclusion

This court has been joined by several of our sister courts in holding that the *Hughes* tolling doctrine does not extend to transactional work.  Applying this court's holding in *Burnap*, we refuse to extend the *Hughes* tolling doctrine to the facts of the instant case.

### DISCOVERY RULE

In its second issue, CellTex contends that Kreager and Cheslock failed to conclusively prove when CellTex discovered its legal malpractice claim.  Kreager and Cheslock attached the following deposition testimony of Gregory Huber, the president of CellTex's general partner, to its motion for summary judgment to contend CellTex discovered its claim by May of 2007 at the latest:

> Q.      Okay.  When did it first cross your mind that Mr. Cheslock may have made a mistake in relation to his work for you on this project?
> A.      I guess in — you know, varying times between — You know, obviously when the money was not there, it kind of crossed my mind.  We filed some insurance claims, and that came back rejected, so I kind of wondered about that, you know, what was that about.  I thought I had insurance; you know, how come they're saying there's not any.
>
> ***
>
> Q.      Okay.  Okay.  And about the time of this e-mail, April 19th 2007, had — had you begun to think that perhaps your money had been misappropriated by National Exchange?
> A.      Well, I thought they made an error and invested the money in a 60-day thing instead of where it was supposed to be.  I didn't think they were just lying through their teeth to me.  I just thought it was an honest mistake, it was going to take a little bit longer to get the money.
> Q.      Okay.  When did you decide that — first thing that — Let me start over.  When did you first think that it might not have been an honest mistake and that you might have lost your money?
> A.      I don't know that any particular day happened, but I guess after this time frame ran out, when calls to offices were not answered.  And then sometime in May, I think, the company filed bankruptcy.  So I think in May, we, you know, kind of realized that "Well, all right.  There's some bigger issues here than…"
> Q.      Okay.  So by May 2007, you — you were thinking that — that perhaps your money had been taken by National Exchange?
> A.      Right.  I mean, it was — it was somewhere other than where it was supposed to be.

> Q.     And you were concerned at that time that the National Exchange had misappropriated your money in May of '07?
> A.     Well, we weren't — weren't really sure.  We knew that, you know, National Exchange didn't do with the money as they were supposed to.
> Q.     Right.  And that naturally caused you some concern, correct?
> A.     Yes.

The record also contains a demand letter Cheslock sent to National Exchange on May 1, 2007, demanding immediate delivery of the sales proceeds in accordance with the agreement.  The record further contains a letter from National Exchange's bonding company dated May 2, 2007, stating that CellTex did not have standing to assert a claim under the bond.  The record reflects that this letter was forwarded to Huber on May 2, 2007.  CellTex did not file the underlying legal malpractice claim until April of 2011.

The discovery rule is a legal principle, applicable in legal malpractice claims, which tolls the running of the limitations period.  *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988). "[T]he discovery rule operates to defer accrual of a cause of action until a plaintiff discovers or, through the exercise of reasonable care and diligence, should discovery the 'nature of his injury.'"  *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998).

"[D]iscovering the 'nature of the injury' requires knowledge of the wrongful act and the resulting injury."  *Id*.  "Thus, when the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another."  *Id*.  "[O]nce these requirements are satisfied," however, "limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer."  *Id*.; *see also Pressure Sys. Int'l, Inc. v. Southwest Research Inst.*, 350 S.W.3d 212, 216 (Tex. App.—San Antonio 2011, pet. denied).  "That is, the plaintiff must be aware that his injury was caused by someone's wrongful act, but need not necessarily know *who* performed the wrongful act."  *Pressure Sys. Int'l, Inc.*, 350 S.W.3d at 217 (emphasis in

original). Under those circumstances, limitations commences, and the plaintiff must exercise reasonable diligence to identify the wrongdoer. Stated differently, "[o]nce a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'" *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners, Ltd. P'ship*, 146 S.W.3d 79, 93-94 (Tex. 2004)). "After being put on notice of the alleged harm or injury-causing actions, the claimant must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, within the limitations period." *Id*.

"Inquiries involving the discovery rule usually entail questions for the trier of fact." *Childs*, 974 S.W.2d at 44. "However, the commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Id*.

The summary judgment evidence established that CellTex knew its money "was somewhere other than where it was supposed to be" in May of 2007. Gruber testified that it crossed his mind that Cheslock may have made a mistake in relation to his work "when the money was not there." Accordingly, by May of 2007, CellTex knew it had suffered a wrongful injury. Although CellTex may not have identified Kreager and Cheslock as being responsible for the injury based on their failure to perform their legal services in accordance with the applicable standard of care, the law does not require that CellTex know the identity of the wrongdoer before limitations commences. Accordingly, we overrule CellTex's contention that Kreager and Cheslock failed to conclusively prove when tolling ended under the discovery rule.

## CONCLUSION

Because the *Hughes* tolling doctrine does not apply to transactional work such as that performed by Kreager and Cheslock and because CellTex knew that the loss of its money was likely caused by the wrongful acts of another by May 2007 at the latest, we affirm the trial court's judgment concluding that CellTex's legal malpractice claim was barred by limitations.

Catherine Stone, Chief Justice