Thomas E. BRENTS and Doris
H. Brents, Appellants,

v.

HAYNES & BOONE, L.L.P., William
D. Ratliff III, and G. Dennis
Sheehan, Appellees.

No. 05–97–01906–CV.

Court of Appeals of Texas,
Dallas.

Aug. 24, 2001.

Mark J. Carroll, Dallas, for appellant.

LaDawn H. Conway, Charles George Orr, Nina Cortell, Dallas, Craig M. Price, Fort Worth, Haynes & Boone, LLP, Richard L. Bourland, Fort Worth, for appellee.

Before Justices WHITTINGTON, MOSELEY, and ROSENBERG.[1]

## OPINION ON REMAND

Opinion by Justice ROSENBERG.

This appeal is before this Court on remand from the Texas Supreme Court. Appellants Thomas and Doris Brents (the Brentses) appealed a summary judgment granted in favor of Haynes & Boone, L.L.P., William D. Ratliff III, and G. Dennis Sheehan (collectively, Haynes & Boone), by which the trial court held that the statute of limitations had run on the Brentses' attorney malpractice claim. This Court affirmed the trial court's judgment, applying language in *Murphy v. Campbell,* 964 S.W.2d 265 (Tex.1997), to the attorney tolling provisions of *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991). *Brents v. Haynes & Boone, L.L.P.,* 10 S.W.3d 772 (Tex.App.—Dallas 2000, pet. granted). This Court concluded that the *Hughes* equitable tolling rule did not apply because the Brentses were not forced into an inconsistent position in defending the federal lawsuit and suing the attorney who had represented them in that litigation. *Id.* at 778. The Texas Supreme Court vacated this ruling, remanding the case to this Court to consider the tolling of the statute of limitations issues in light of its decisions in *Apex Towing Co. v. Tolin,* 41 S.W.3d 118 (Tex.2001), and *Underkofler v. Vanasek,* 53 S.W.3d 343 (2001) (not yet released for publication). *Brents v.*

---

**1.** The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

*Haynes & Boone,* 52 S.W.3d 733 (2001) (per curiam). Having done so, we affirm the judgment in favor of Haynes & Boone.

### Factual and Procedural History

On July 1, 1991, Haynes & Boone filed a lawsuit on behalf of the Brentses and other homeowners against Edward Pine, his title company, and the Tarrant County Mental Health Mental Retardation Association (MHMR), seeking to prevent Pine from selling his residential property to MHMR for a group home (MHMR lawsuit). The petition and application for temporary restraining order alleged that the proposed use of the property would violate the deed restrictions for single-family use and cause the diminution of property values. On July 8, 1991, the TRO was dismissed, and the following day Pine was nonsuited from the case.

On or about September 14, 1991, the Brentses received a notice of a discrimination complaint from the United States Department of Housing and Urban Development (HUD) and a copy of Pine's complaint that outlined his neighbors' alleged discriminatory activities, including the filing of the MHMR lawsuit. Pine wrote that the Brentses' participation in the MHMR lawsuit violated state and federal laws that provide for the location of group homes and prohibit discrimination against the disabled. Haynes & Boone[2] responded for itself and the Brentses and the Brentses also individually responded to the HUD notice. On October 14, 1991, Haynes & Boone communicated its response to the Brentses.

On October 18, 1991, the Brentses told Haynes & Boone that they no longer wanted to be involved in the MHMR lawsuit. Nevertheless, they remained plaintiffs. In 1992, Haynes & Boone wrote the Brentses, requesting approval for the dismissal of the MHMR lawsuit. The Brentses responded that they no longer considered themselves parties in that lawsuit because of their October 1991 letter. Then, on November 9, 1992, the remaining allegations in the MHMR lawsuit were voluntarily dismissed.

On October 19, 1994, HUD charged the Brentses with discrimination, and on November 25, 1994, the United States brought an action against the Brentses for discriminatory conduct. The suit alleged in part that the MHMR lawsuit was "intended to prevent the sale of the residence ... to MHMR because of the handicap of the prospective residents." The petition further alleged that the MHMR lawsuit delayed the sale of the residence, had no rational basis in law or fact, and sought an illegal objective. The Brentses employed Jeff Wolf to defend them in the discrimination lawsuit. The Brentses defended the allegations in part by claiming they had not given consent to be plaintiffs in the MHMR lawsuit and did not have an attorney-client relationship with Haynes & Boone.

On May 20, 1996, the United States district court found Thomas Brents had acted in a discriminatory manner but Doris Brents had not. The court found the Brentses voluntarily participated in the MHMR lawsuit and the lawsuit was groundless.

On October 18, 1996, the Brentses filed their legal malpractice action against Haynes & Boone. In response, Haynes & Boone filed a motion for summary judgment seeking dismissal based on the affirmative defense of limitations. The court granted the summary judgment motion. The Brentses argue on appeal that, under *Hughes,* the statute of limitations on this malpractice claim was tolled until May 20, 1996, when the federal discrimination lawsuit against the Brentses ended. They

---

**2.** Haynes & Boone was also listed individually as a defendant in Pine's complaint.

also argue that their cause of action did not accrue until October 19, 1994, when HUD issued a charge of discrimination against the Brentses and they discovered the MHMR lawsuit was groundless.

## Standard of Review

When a defendant moves for summary judgment based on the affirmative defense of limitations, he assumes the burden of showing as a matter of law that the suit is barred by limitations. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 80–81 (Tex.1989); *see Fernandez v. Mem'l Healthcare Sys., Inc.,* 896 S.W.2d 227, 230 (Tex.App.—Houston [1st Dist.] 1995, writ denied). The question of when a cause of action accrues is a question of law for the court. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). When reviewing a summary judgment, we take as true evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

## The Parties' Relationship

The Brentses assert the trial court should not have granted summary judgment based on limitations. The Brentses argue that because they had an attorney-client relationship with Haynes & Boone, the discovery rule and tolling provisions applicable to legal malpractice apply and their claim was not barred by limitations. Haynes & Boone contends the Brentses asserted a general negligence cause of action, not a claim for legal malpractice, and thus the discovery rule and the tolling provisions cited by the Brentses do not apply. To address Haynes & Boone's contention, we examine the summary judgment record for evidence that would support the Brentses' contention an attorney-client relationship exists.

The record contains letters to the Brentses from Haynes & Boone concerning the MHMR lawsuit. These letters indicate attorneys at the firm represented the Brentses. Haynes & Boone informed the Brentses about the litigation and sought approval for actions in the MHMR lawsuit. These letters indicate an attorney-client relationship. On the other hand, there was evidence in the Brentses' deposition testimony that they did not seek advice from Haynes & Boone and did not consider Haynes & Boone their attorneys. We conclude this summary judgment evidence creates a fact question regarding whether an attorney-client relationship was established between Haynes & Boone and the Brentses with respect to the MHMR litigation. Therefore, we address the statute of limitations issues applicable in a legal malpractice claim.

## Discovery Rule

As a legal malpractice action, the Brentses' suit must be brought within two years of the date the cause of action accrued. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2001); *Willis,* 760 S.W.2d at 644. The record shows the MHMR lawsuit, found groundless in the federal lawsuit, was filed on July 1, 1991. In an ordinary negligence case, the filing date would be the date of "legal injury" because the tort was complete then. *See McClung v. Johnson,* 620 S.W.2d 644, 646 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). But in a malpractice case, the statute of limitations does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action. *Willis,* 760 S.W.2d at 645–46. The attorney's conduct must raise only a risk of harm to the client's legally protected interest for the tort to accrue; the harm need not be finally established or an inevitable

consequence of the conduct. *See Zidell v. Bird,* 692 S.W.2d 550, 557 (Tex.App.—Austin 1985, no writ). A cause of action accrues on a fact specific basis when the client discovers a risk of harm to his economic interests, whether at the time of judgment or otherwise. *See Ponder v. Brice & Mankoff,* 889 S.W.2d 637, 641–42 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ By summary judgment affidavit, the Brentses asserted they did not discover the suit was groundless until October 19, 1994, when HUD issued a determination of reasonable cause for discrimination. The test, however, is not when they knew the suit was groundless but when they knew they were at risk of harm. The summary judgment evidence was uncontroverted that the Brentses received a letter on or about September 14, 1991, notifying them of a HUD investigation. That letter stated the Brentses were included in the complaint because they were plaintiffs in the MHMR lawsuit. In the letter, John Eubanks, director of HUD's Fair Housing Enforcement Division, wrote that "the complainant may ... commence a civil action in an appropriate Federal district or state court." As a matter of law, the Brentses discovered they were at risk of economic harm when they received the HUD letter. Accordingly, the Brentses' cause of action against Haynes & Boone accrued on or about September 14, 1991.

### Tolling

■ In *Hughes,* the Texas Supreme Court announced an equitable tolling rule in legal malpractice cases until the conclusion of the litigation in which the malpractice occurred. *See Hughes,* 821 S.W.2d at 157. In a later case, the supreme court included within the *Hughes* tolling provi-

sion situations in which malpractice in a transaction results in litigation. *Gulf Coast Inv. Corp. v. Brown,* 821 S.W.2d 159, 160 (Tex.1991) (per curiam). The court held the statute of limitations is tolled until the subsequent litigation is final. *Id.* (when conduct of non-judicial foreclosure results in wrongful foreclosure litigation, malpractice claim is tolled until wrongful foreclosure action is finally resolved). This extension of the tolling provision is based on the viability of the malpractice resting on the outcome of the subsequent litigation. *See id.* (citing *Hughes,* 821 S.W.2d at 157). The supreme court recently reaffirmed the *Hughes* rule in *Apex Towing Co.,* stating:

> When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded.

*Apex Towing Co.,* 41 S.W.3d at 119; *see Underkofler,* 44 Tex. Sup.Ct. J. at 465, 53 S.W.3d at 347. The *Hughes* rule applies regardless of when the malpractice defendant ceased to have an attorney-client relationship with the malpractice plaintiff. *Apex Towing Co.,* 41 S.W.3d at 119. The supreme court has mandated that in each case matching the *Hughes* paradigm the courts should apply the *Hughes* tolling rule to the category of legal malpractice cases encompassed within its definition. *Id.* at 122.

There is evidence that Haynes & Boone continued to represent the Brentses until the dismissal of the MHMR lawsuit on November 9, 1992.[3] The summary judgment evidence demonstrated there was no attorney-client relationship after that law-

---

**3.** The Brentses attempted to withdraw from the suit in October 1991 and end the attorney-client relationship. However, because

Haynes & Boone sought the Brentses' consent in September 1992, there is evidence that the

suit was dismissed. Thus, under *Hughes,* the statute would be tolled at least until the November 9, 1992 dismissal, the conclusion of the MHMR litigation. However, the Brentses contend that, under *Hughes,* limitations should be further tolled until the completion of the federal lawsuit because the federal lawsuit is the underlying litigation caused by the Haynes & Boone malpractice in the MHMR litigation. The Brentses argue that the malpractice claim was tolled until there was a resolution of Pine's complaint filed with HUD. They claim they could not have pursued the malpractice suit until HUD or the federal court finally determined that the filing of the MHMR suit was frivolous and a violation of the Fair Housing Act. Haynes & Boone argues that the extension of the *Hughes* tolling rule to a lawsuit filed more than two years after the discovery of the malpractice would result in the revival of a claim. It argues that this result would revive a claim that is already time-barred and frustrate the policy reasons that underlie limitations statutes.

Neither *Apex Towing Co.* nor *Underkofler* addresses whether tolling of a legal malpractice action that occurs in litigation will be extended beyond the conclusion of litigation of a claim concerning whether malpractice allegedly occurred, to the conclusion of threatened subsequent litigation against the "malpracticed" party based on that malpractice. Here we have the unusual situation in which the underlying claim in which the alleged malpractice occurred is final, but subsequent litigation resulted in part from that alleged malpractice. In fact, the subsequent federal litigation was commenced more than two years after the conclusion of the MHMR litigation in which the alleged malpractice occurred. Although the federal litigation was preceded by the 1991 notice informing the Brentses that HUD would conduct an

"investigation" as part of the "administrative complaint process," possible outcomes of such investigation were "conciliation" or a "civil action" that "must be commenced no later than two years after the occurrence or termination of an alleged discriminatory housing practice." The letter refers to the process provided in title 42 of the United States Code, sections 3600 through 3620. *See* 42 U.S.C.A. §§ 3610–3614 (West 1994) (codifying Fair Housing Amendments Act, Pub.L. No. 100–430, § 8(2), 102 Stat. 1619, 1625–35 (1988)). The administrative investigation, provided for by statute, was required by the filing of Pine's complaint in 1991. The statute did not require that a federal lawsuit be filed at that time. Thus, Pine's complaint did not commence litigation.

 In keeping with the "bright-line rule" reiterated in *Apex Towing Co.,* 41 S.W.3d at 119, 122, we decline to broaden "litigation" to include an administrative investigation that might later result in a lawsuit. *See Ponder,* 889 S.W.2d at 644 (contrasting judicial proceedings with a tax audit). Tolling limitations through administrative investigations with the potential of litigation would extend the equitable tolling principle beyond that contemplated in *Hughes.* Because the federal lawsuit was not commenced until after the two-year statute had run, we need not address whether the federal lawsuit could have tolled the malpractice claim under *Hughes.*

Rejecting the Brentses' arguments that the *Hughes* tolling rule applies to toll limitations from their notice of investigation until the federal discrimination lawsuit ended, we affirm the trial court's summary judgment.

---

relationship continued until the end of the MHMR litigation.