**AFFIRM; and Opinion Filed June 28, 2016.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-15-00029-CV

**J.A. GREEN DEVELOPMENT CORP., JAGI, INC., AND JAGI VERDE LLC, Appellants**
**V.**
**GRANT THORNTON, LLP, JAMIE B. FOWLER, AND AKIN GUMP STRAUSS HAUER & FELD LLP, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-00312**

## MEMORANDUM OPINION
Before Justices Bridges, Evans, and O'Neill[1]
Opinion by Justice O'Neill

Appellants J.A. Green Development Corp., JAGI , Inc., and JAGI Verde LLC (together,

J.A. Green) challenge the trial court's orders granting summary judgment in favor of appellees

Grant Thornton, LLP (Grant Thornton), Jamie B. Fowler, and Akin Gump Strauss Hauer & Feld

LLP (Akin Gump). In five issues, J.A. Green challenges both the limitations and anti-fracturing

grounds on which appellees based their summary judgment motions. For the reasons discussed

below, we affirm the trial court's orders.

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals. Fifth District of Texas at Dallas, Retired, sitting by assignment.

## Background

According to appellants' first amended petition,[2] J.A. Green was advised in 2001 by its auditors, BDO Seidman, LLP (BDO), and its accounting advisors, Gramercy Advisors LLC (Gramercy), to participate in a tax investment plan called a distressed debt strategy. The strategy would allow J.A. Grant to reduce its tax liabilities by reporting substantial losses associated with the sale of certain properties. Embracing the advice, J.A. Green participated in the distressed debt strategy and reported those losses on its 2001 federal, New York State, and New York City tax returns.

In April 2003, the Internal Revenue Service (IRS) initiated audits of J.A. Green's federal return based on its participation in this strategy. New York State also began an audit of J.A. Green's state return. In May of that year, J.A. Green hired Akin Gump to represent it in both audits. In January 2005, J.A. Green hired Grant Thornton to replace BDO as its account advisor on the appeals. Fowler was J.A. Green's primary advisor at Grant Thornton.

Akin Gump and Grant Thornton advised J.A. Green that its tax positions taken pursuant to the distressed debt strategy were strong and likely to be upheld as legal. Accordingly, when both New York State and the IRS proposed settling J.A. Green's tax liability in 2005, Akin Gump and Grant Thornton advised J.A. Green not to settle or to pre-pay any tax liabilities, urging that it could make a better deal than the ones offered. The IRS settlement offer at this time required payment of all back taxes owed if the distressed debt strategy were disallowed, a ten percent penalty, and interest on the taxes and penalty. The offer did allow J.A. Green to deduct all fees it had paid in connection with the strategy—purportedly some $3,600,000—from its taxable income.

---

[2] We view the facts in the light most favorable to J.A. Green. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994). Both summary judgment motions assumed, for purposes of the motions, that the facts alleged by J.A. Green were true.

J.A. Green characterizes the subsequent period of time as an aggressive prosecution by the IRS. The agency initiated discovery and launched significant document requests, but—in December 2006—Fowler told J.A. Green that it remained in a strong position and would prevail in the audit. The audit's initial phase culminated on December 18, 2008, when the IRS issued its Examiner's Report and 30-Day Notice, disallowing entirely the loss J.A. Green had claimed pursuant to the distressed debt strategy. The IRS imposed a forty percent penalty on the tax owed, and it assessed interest on the tax and penalty. The IRS further disallowed any deduction of the fees J.A. Green had paid in connection with the strategy.

On December 22, 2008, four days after the IRS ruling, Fowler and Don Alexander (the Akin Gump partner handling this matter) participated in a conference call with Dan Green (an officer in each appellant company and J.A. Green's principal throughout the audit). In its amended petition, J.A. Green described Fowler and Alexander as "tense and uncomfortable" during this conference call. Their comments led Green to believe the IRS report was worse than Fowler and Alexander believed it would be. Fowler indicated that she was no longer as confident in her advice and instructions and that she was wavering on her prior repeated assertions that the distressed debt strategy was a completely legal transaction, appellants' tax position was strong, and appellants would prevail in the IRS dispute. Green "was without question shocked and surprised by such a turn of events." He asked Fowler why she was taking "such a drastic change of position" from the last four years, but Fowler could not provide an explanation at that time other than to advise Green that "the environment has become more hostile." Alexander, although "not as vocal or animated" as Fowler, communicated the same positions Fowler did. After receipt of the 30-Day Notice, Alexander's positions were "weaker" than the advice and instructions he and Fowler had repeatedly given appellants, i.e., that

appellants' tax position was very strong, the distressed debt strategy was a completely legal tax transaction, and appellants would prevail in the IRS dispute.

Approximately six months after the 30-Day Notice and the conference call that "shocked and surprised" Green, J.A. Green filed suit against BDO and Gramercy (the BDO Lawsuit), alleging breach of fiduciary duty, negligence/professional malpractice, negligent misrepresentation, fraud, civil conspiracy, breach of contract, and violations of the Texas Deceptive Trade Practices Act. J.A. Green sought actual and punitive damages, attorney's fees, disgorgement, rescission, and declaratory relief. Within its pleading, J.A. Green stated that "the IRS has indicated it will assess [J.A. Grant] with back-taxes, interest, and penalties as a direct result of [its] participation in the Distressed Debt Strategy." Significantly, J.A. Green specifically pleaded that it did not discover the injuries caused by the wrongful acts of the BDO defendants until approximately December 18, 2008, the date of the 30-Day Notice from the IRS.

Akin Gump and Grant Thornton continued representing J.A. Green. An appeal conference was held in November 2009; it did not go well. Indeed, J.A. Green's amended petition stated that "it was clear to everyone in the room that the appeals officer and supervisor were entrenched in the position that the loss from the Distressed Debt Strategy would be disallowed, a penalty enforced, and no deduction of legal, investment, and accounting fees would be allowed." J.A. Green settled with the IRS in March 2010 on less favorable terms than had been offered back in 2005. J.A. Green also paid penalties and interest to New York State and New York City based on its participation in the distressed debt strategy.[3]

J.A. Green initiated this lawsuit in January 2014. Its original petition asserted negligence and gross negligence claims against all appellants and sought actual and exemplary damages. After answering, Akin Gump and Grant Thornton (together with Fowler) filed separate motions

---

[3] Following the March 2010 settlement, J.A. Green entered into a series of tolling agreements with both Akin Gump and Grant Thornton. The parties do not dispute the amount of time tolled during the terms of those agreements.

for summary judgment, both of which urged that J.A. Green's claims were barred by the two-year statute of limitations for negligence claims. J.A. Grant then filed its first amended petition, pleading that it had not discovered its claims against appellees until the appellate conference on November 17, 2009. J.A. Grant pleaded further that limitations on its claims was tolled by fraudulent concealment and the *Hughes* doctrine involving continuous representation. J.A. Grant also added claims against appellees for breach of fiduciary duty, fraud, and negligent misrepresentation. Appellants amended their motions for summary judgment to address the new pleading. The motions were heard, and both motions were granted by the trial court.

J.A. Grant appeals.

### The Amended Summary Judgment Motions

In its amended motion, Akin Gump argued J.A. Green's professional negligence claim accrued, at the latest, when J.A. Grant received the IRS 30-day letter; the claim was, therefore, barred by the two-year statute of limitations. The firm argued that the rule announced in *Hughes v. Mahoney & Higgins*, 821 S.W.2d 154 (Tex. 1991) did not toll appellants' limitations period, and appellants' later-added fraud and breach of fiduciary duty claims were barred by Texas' anti-fracturing rule. Akin Gump's summary judgment evidence included the tolling agreements into which Akin Gump and appellants had entered and a copy of appellants' original petition in the BDO lawsuit.

Grant Thornton and Fowler's amended motion initially argued that all of J.A. Grant's claims were barred by the terms of an engagement letter between it and Grant Thornton. Specifically, that letter set forth a two-year statute of limitations that would apply to any claims between the parties. In the alternative, the motion makes the same three arguments made in Akin Gump's amended motion: the professional negligence claim was barred by the two-year statute

of limitations, the *Hughes* doctrine did not apply in this case, and the fraud and breach of fiduciary duty claims were barred by the anti-fracturing rule.

J.A. Green filed a consolidated response to the two amended motions. It argued the movants were wrong to rely on the date of the 30-Day Notice as the date J.A. Green's claims against them accrued. Instead, J.A. Green argued, any claims against these defendants accrued later, when the appellate conference established J.A. Green would not be able to settle its tax liability in a more favorable manner. J.A. Green argued the injury it sustained from Grant Thornton and Akin Gump was separate from the one caused by the BDO parties, because this injury occurred not at the promotion stage, but during the audit process. J.A. Green argued that a fact issue existed as to whether the defendants had fraudulently concealed information from it and that the anti-fracturing rule did not apply to its claims for breach of fiduciary duty and fraud. Finally, J.A. Grant argued its breach of fiduciary duty and fraud claims were not barred by its engagement letter with Grant Thornton.

We apply well-known standards in our review of traditional summary judgment motions. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within the framework of these standards, we review the summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

In its first issue, J.A. Green asserts generally that the trial court erred in granting summary judgment. In its second through fifth issues, J.A. Green challenges the individual bases for granting the motions.

## Limitations in the Professional Negligence Claim

In its second issue, J.A. Green argues appellees did not conclusively establish that J.A. Green brought suit on its professional negligence claims outside the period of limitations.

### *The Discovery Rule*

The general rule is that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). Appellees argued in their summary judgment motions that J.A. Green discovered appellees caused it injury on December 18, 2008, when the IRS notified the parties that it would be assessing back taxes, penalties, and interest for J.A. Green's participation in the distressed debt strategy. Appellees pointed to J.A. Grant's petition in the BDO Lawsuit, in which J.A. Grant specifically asserted that it discovered its injury on that date, when it learned that the IRS would assess back-taxes, penalties, and interest for its participation in the distressed debt strategy.

J.A. Green concedes that it was first injured by the promotion of the illegal tax strategy. It attributes that injury to the defendants in the BDO Lawsuit and acknowledges the claims related to that injury accrued on December 18, 2008. J.A. Green argues, however, that appellees caused a second, separate injury by their advice during the course of the IRS audit. This second injury, it contends, could not have been discovered before the appellate conference on November 17, 2009. J.A. Green argues further that the damages it claims from this second injury are distinct from those it claimed in the BDO Lawsuit. The purported second injury and distinct damages alleged by J.A. Green are rooted in its allegation that neither Grant Thornton

nor Akin Gump ever retracted their advice that J.A. Green would likely achieve a better result at the appellate level and that the best strategy for settlement was to refrain from prepaying potential tax liabilities. J.A. Green complains that because of this failure to change their advice, appellees caused it (a) to incur additional back tax, interest, and penalties, and, significantly, (b) to lose a deduction for incurred fees that was included as part of the 2005 settlement offer.

J.A. Green's claim accrued when it knew or should have known of the wrongfully caused injury. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). It did not need to know "the specific nature of each wrongful act that may have caused the injury." *See id.* Nor did it need to know the full extent of its injury. *See Murphy*, 964 S.W.2d at 270. Thus, neither the fact that the injury continued through the appellate process, nor the fact that the injury grew to include the loss of a significant deduction, affected the point at which J.A. Grant discovered the injury for purposes of this lawsuit. We conclude J.A. Grant suffered a single continuous injury from its connection with the distressed debt strategy.

J.A. Green pleaded in the BDO suit that it learned of its injury involving the distressed debt strategy after receiving the 30-Day Notice. Its discovery was reinforced when it was "shocked and surprised" by the "drastic" change in Fowler and Alexander's evaluation of the case after receiving that notice. We conclude J.A. Green's claims related to the distressed debt strategy accrued when it received the IRS' 30-Day Notice and learned the strategy would be disallowed and it would be charged back taxes, interest, and penalties. *See id.* at 271 (claimant should know of its injury from deficient tax advice no later than receipt of IRS' deficiency notice).

J.A. Green also argues that the running of limitations on its negligence claims should be tolled by the doctrine of fraudulent concealment. It argues both appellees concealed their prior involvement in transactions "virtually identical to the Distressed Debt Strategy" in order protect

themselves from liability, not only to J.A. Green, but also to their other clients. To establish fraudulent concealment, a claimant must show the defendant actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the claimant. *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001). J.A. Green asserts that appellees knew the distressed debt strategy would be disallowed by the IRS as an illegal tax shelter, that appellees failed to disclose this knowledge, and that they had a fixed purpose to conceal the wrongful conduct to protect themselves or their clients. The "wrong," then, of which J.A. Green complains is appellees' purported knowledge that the tax shelter was illegal and would be disallowed by the IRS.

A defendant's fraudulent concealment of wrongdoing can toll the running of limitations. *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008). However, this doctrine only tolls the running of limitations until the defendant's fraud is discovered or could have been discovered with reasonable diligence. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). "Diligence is required when claimants have been 'put on notice of the alleged harm of injury-causing actions.'" *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011) (quoting *Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 207 (Tex. 2011)).

J.A. Green acknowledged in the BDO Lawsuit that it was put on notice concerning the illegality of the distressed debt strategy when it received the 30-Day Notice from the IRS. Having been put on notice at that time of "the alleged harm of appellees' injury-causing actions," diligence was required on J.A. Green's part. *See Shell Oil Co.*, 356 S.W.3d at 928. Instead, J.A. Green continued to rely on that same advice from appellees simply because they did not retract it. To obtain the benefit of tolling based on fraudulent representations, J.A. Green's continued reliance on appellees' advice concerning the legality of the distressed debt strategy had to be reasonable, and reliance is not reasonable when information revealing the truth could have been

discovered within the limitations period. *BP Am. Prod. Co.*, 342 S.W.3d at 68. The doctrine of fraudulent concealment does not operate to toll the running of limitations on J.A. Green's claims against appellees.

We conclude Grant Thornton and Akin Gump negated J.A. Green's claim that it did not discover its injury, and thus its claims against them, within the limitations period in this case. Because they established that those claims accrued more than two years before J.A. Green filed suit against them, the trial court correctly granted summary judgment in appellees' favor on J.A. Green's professional negligence claims. We overrule J.A. Green's second issue.

*Tolling of Limitations by the Hughes Rule*

In their third issue, J.A. Green argues that the tolling rule announced in *Hughes v. Mahoney & Higgins* should apply to toll limitations on its professional negligence claim. In *Hughes*, the supreme court addressed the situation in which a client discovers her attorney's negligence while the same litigation is working its way through the appellate process. In that situation, the client may be forced to adopt inconsistent positions in the underlying case and the malpractice case. 821 S.W.2d at 156. Because the viability of the malpractice claim depends on the outcome of the underlying claim, the court held "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157.

The supreme court addressed this issue some years later and declined to expand the *Hughes* rule to any case in which a litigant might be forced to adopt inconsistent positions. *Murphy*, 964 S.W.2d at 272. The court stated it had "expressly limited the rule in *Hughes* to attorney malpractice in the prosecution or defense of a claim that results in litigation." *Id.* J.A. Grant concedes that this Court has previously declined to apply *Hughes* to toll a claim for

–10–

attorney negligence in an administrative investigation. *See Brents v. Haynes & Boone, LLP*, 53 S.W.3d 911, 916 (Tex. App.—Dallas 2001, pet. denied) ("[W]e decline to broaden 'litigation' to include an administrative investigation that might later result in a lawsuit."); *see also Hoover v. Gregory*, 835 S.W.2d 668, 675 (Tex. App.—Dallas 1992, writ denied) ("we conclude that resolution of the appellants' tax case is not dispositive of their complaints that appellees acted negligently"). Despite J.A. Grant's efforts to distinguish *Brents* factually, we conclude the supreme court's "bright line" rule concerning attorney negligence in an administrative proceeding must apply in this case as well. *See Brents*, 53 S.W.3d at 916. Thus, we conclude J.A. Grant's professional negligence claim against Akin, Gump is not tolled by the *Hughes* rule.

We conclude further that J.A. Grant's negligence claim against Grant Thornton cannot be tolled by the *Hughes* rule because that rule has been expressly limited to attorney malpractice. *See Murphy*, 964 S.W.2d at 272; *see also Hoover*, 835 S.W.2d at 675 ("We recognize the uniqueness of the confidential relationship between an attorney and a client and determine that it is the special nature of this relationship that the *Hughes* court intended to protect.").

We decline to expand the *Hughes* rule beyond its current reach. We overrule J.A. Grant's third issue.

### The Anti-Fracturing Rule

In its fourth issue, J.A. Grant contends the trial court erroneously concluded that the anti-fracturing rule barred its claims for breach of fiduciary duty, fraud, and negligent misrepresentation. We apply this anti-fracturing rule to prevent a plaintiff from recasting professional negligence claims as fraud or breach of fiduciary duty claims. *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied).[4] In a professional negligence claim, the gravamen of the plaintiff's complaint focuses on the quality or adequacy of the

---

[4] In this case, J.A. Grant does not make separate allegations concerning its claim for negligent misrepresentation. We will not refer to it separately in our discussion; instead, it will be subsumed—as it is in the amended petition—within our discussion of fraud.

attorney's representation. *Id.* In a claim for breach of fiduciary duty, however, the complaint focuses on whether the attorney received an improper benefit from the representation; such a claim involves the integrity and fidelity of the attorney. *Id.*; *see also Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied). Thus, we have allowed an attorney's client to sue for fraud in cases where the complaint focuses on the integrity of the fees charged by the attorney. *Gruber*, 241 S.W.3d at 693. Whether allegations against a lawyer or accountant that are labeled as breach of fiduciary duty, fraud, or some other cause of action are actually claims for professional negligence is a question of law to be determined by the court. *Id.* at 692. We review questions of law de novo. *Id.*

The summary judgment motions before us assumed the allegations concerning fraud and breach of fiduciary duty in J.A. Green's amended petition were true for purposes of the motions. We look to those allegations to determine the substance of J.A. Green's complaint. *See id.* at 698. J.A. Green alleged appellees breached their fiduciary duties to it by "failing to disclose their prior involvement in and knowledge of transactions similar to and virtually identical to the Distressed Debt Strategy." J.A. Green alleged appellees had defrauded it through five representations:

> Representing that the Distressed Debt Strategy was a completely legal tax reducing investment strategy;
>
> Representing that Plaintiffs' tax position was strong;
>
> Representing that Plaintiffs would prevail against the IRS;
>
> Representing that Plaintiffs would achieve a better settlement of the audit of the Distressed Debt Strategy on appeal; [and]
>
> Representing that Plaintiffs should not pay the taxes to cut off the running of interest;

and six omissions essentially mirroring those alleged representations:

–12–

Failing to advise Plaintiffs that the Distressed Debt Strategy was an illegal and abusive tax shelter that the IRS would disallow and assess Plaintiffs with back-taxes, interest, and penalties;

Failing to advise Plaintiffs that Plaintiffs' tax position was weak;

Failing to advise Plaintiffs that Plaintiffs would not prevail in the IRS dispute, whether during the audit, at appeals, or in court.

Failing to advise Plaintiffs to pay the taxes to cut off the running of interest;

Failing to disclose the material facts and Grant Thornton's prior and ongoing experience, knowledge, and relationships as discussed hereinabove;

Failing to disclose Akin Gump's prior experience, knowledge, and relationships as discussed hereinabove.

J.A. Green says the focus of its fraud and breach of fiduciary claims is found in these last allegations concerning appellees' failure to disclose what they knew about the same or similar tax strategies from representing other clients. However, J.A. Green's professional negligence pleading concludes with an allegation that is essentially identical to those made in the fraud and breach of fiduciary claims:

Failing to advise Plaintiffs of the Defendants' prior experience, involvement, and knowledge discussed hereinabove.[5]

---

[5] J.A. Green's other negligence allegations are:

Advising Plaintiffs to reject the IRS and New York settlement offers that were available in late 2005 and early 2006 based on faulty advice that the Distressed Debt transaction was a completely legal transaction, Plaintiffs' tax position was strong, and Plaintiffs would prevail in the IRS dispute;

Advising Plaintiffs not to make any payment to stop interest from continuing to accrue despite the fact that Plaintiffs were in a favorable cash position, and, therefore, could make a payment and substantially reduce damages; and

Advising Plaintiffs to reject the IRS and New York settlement offers that were available in late 2005 and early 2006 because "they could do better on appeals."

Advising Plaintiffs that the Distressed Debt Strategy was a completely legal transaction;

Advising Plaintiffs that Plaintiffs' tax position was strong;

Advising Plaintiffs that Plaintiffs would prevail in the IRS dispute;

Advising Plaintiffs that Plaintiffs would be able to achieve a very favorable settlement during appeals;

Failing to advise Plaintiffs to accept the IRS and New York settlement offers that were available in late 2005 and early 2006;

Failing to advise Plaintiffs to make payments to stop interest from continuing to accrue, especially considering that Plaintiffs were in a favorable cast position and, therefore, could make a payment and substantially reduce damages;

–13–

Despite J.A. Green's arguments to the contrary, we conclude the allegations supporting each of these three legal claims are identical.

J.A. Green also argues it has pleaded different injuries and is seeking different damages for these purportedly different claims. For its professional negligence claim, J.A. Green pleads:

> In reasonable reliance on Defendants' negligent and grossly negligent/malicious advice, Plaintiffs suffered significant damages, including but not limited to substantial legal and accounting fees and expenses; the loss of certain tax deductions; significant interest and penalty liability to the IRS, State of New York, and City of New York; and the loss of substantial additional monies and damages set forth herein.

For its breach of fiduciary duty and fraud claims, it pleads identically:

> The Defendants' conduct set forth above proximately caused injury and damages to Plaintiffs including but not limited to substantial legal and accounting fees and expenses; the loss of certain tax deductions; significant interest and penalty liability to the IRS, State of New York, and City of New York; and the loss of substantial additional monies and damages set forth herein.

Again, it has pleaded the same injury and damages for all three claims.

J.A. Green relies on two cases in which the court concluded claims for breach of fiduciary duty were not merely re-cast professional negligence claims. We conclude these cases do not control our analysis. In *Riverwalk CY Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229 (Tex. App.—San Antonio 2012, no pet.), the court held that a challenge to the integrity of a law firm's billing practices could support a separate claim for breach of fiduciary duty. *Id.* at 238–39 (firm charged fees nearly double rate in parties' written agreement). Similarly, in *Trousdale v. Henry*, 261 S.W.3d 221 (Tex. App.—Houston [14th Dist.] 2008, pet. denied), when a client alleged that attorneys failed to inform her that her claims

---

Failing to advise Plaintiffs that the Distressed Debt Strategy was an illegal and abusive tax shelter that the IRS would disallow and assess Plaintiffs with back-taxes, interest, and penalties;

Failing to advise Plaintiffs that Plaintiffs' tax position was weak; [and]

Failing to advise Plaintiffs that Plaintiffs would not prevail in the IRS dispute, whether during the audit, appeals, or in court.

had been dismissed, continued to demand and accept payment from her for work on the dismissed claims, and refused to return her file to her, the client had a claim for breach of fiduciary duty. *Id.* at 232. But unlike the clients in these two cases, the essence of J.A. Green's complaint is the advice it was given during the audit phase of a tax matter. Its pleaded allegations charge that the advice was wrong and was incomplete. In both instances, the focus of J.A. Green's allegations is on the adequacy of its representation by Akin Gump and Grant Thornton, and that is a professional negligence claim. *See Won Pak*, 313 S.W.3d at 457; *see also Gruber*, 241 S.W.3d at 697 ("[C]haracterizing conduct as a 'misrepresentation' or 'conflict of interest' does not alone transform what is really a professional negligence claim into either a fraud or a breach-of-fiduciary-duty claim.").

We conclude Texas' anti-fracturing rule bars J.A. Green's claims for fraud and breach of fiduciary duty. The trial court did not err in granting summary judgment in favor of appellees on those claims. We overrule J.A. Green's fourth issue. And because we have now affirmed each ground of the summary judgment motions, we also overrule J.A. Green's first issue, which complained generally of the court's granting the motions.[6]

## Conclusion

We conclude appellees have established that J.A. Grant's professional negligence claims are barred by the two-year statute of limitations. They have likewise established that J.A. Grant's fraud and breach of fiduciary claims are barred by the rule against fracturing claims.

---

[6] Because we have affirmed these rulings by the trial court, we need not address J.A. Green's fifth issue concerning the Grant Thornton engagement letter.

We affirm the trial court's orders granting summary judgment to Fowler, Grant Thornton, and Akin Gump.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED


150029F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

J.A. GREEN DEVELOPMENT CORP.,
JAGI, INC., AND JAGI VERDE LLC,
Appellants

No. 05-15-00029-CV          V.

GRANT THORNTON, LLP, JAMIE B.
FOWLER, AND AKIN GUMP STRAUSS
HAUER & FELD LLP, Appellees

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-00312.
Opinion delivered by Justice O'Neill,
Justices Bridges and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees GRANT THORNTON, LLP, JAMIE B. FOWLER, and
AKIN GUMP STRAUSS HAUER & FELD LLP recover their costs of this appeal from
appellants J.A. GREEN DEVELOPMENT CORP., JAGI, INC., and JAGI VERDE LLC.

Judgment entered this 28th day of June, 2016.